IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONI YOUNG, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v<br><br>POLO RETAIL, LLC, et al,<br><br>    Defendants.<br>_____/ | No   C-02-4546 VRW<br><br>ORDER |

     In this putative class action, plaintiff Toni Young contends that defendants Polo Retail, LLC, Polo Ralph Lauren Corp (collectively, "Polo") and Ralph Lauren Footwear, Inc ("RL Footwear") violated California law by requiring class members to purchase clothing manufactured by their employer on a seasonal basis.  The parties have now reached a settlement.  Accordingly, presently before the court are plaintiff's motions to:  (1) grant provisional certification of the settlement class, including its sub-classes; (2) assign Toni Young as class representative and her counsel as lead counsel to the class; (3) grant preliminary approval of the settlement reached by the parties; (4) approve the

1 proposed form of notice; (5) establish a schedule for class members
2 to object to the settlements and (6) schedule a hearing on final
3 approval of the settlement at which class members may be heard.
4 Doc #114 at 1.  For the reasons stated below, the court GRANTS all
5 of plaintiff's motions.

I

Before addressing the instant motions, the order briefly describes the factual background, procedural history and proposed settlement for this case.

A

On October 1, 2002, plaintiff filed a first amended complaint (FAC) in this diversity case on behalf of herself and a class of current and former employees of defendants' retail stores in California.  FAC at 3, ¶ 7.  Specifically, the FAC alleges that defendants violated several California laws:  (1) the Cartwright Act, Cal Bus & Prof § 16700 et seq, (2) California's Unfair Competition Law (UCL), Cal Bus & Prof § 17200 et seq, (3) Cal Labor Code § 2802, (4) Cal Labor Code § 450 and (5) Cal Labor Code § 201.  See FAC 9-14, ¶¶ 33-64.  For these alleged violations, the FAC seeks declaratory relief, injunctive relief, compensatory damages, treble damages (under the Cartwright Act), punitive or exemplary damages and an award of attorneys' fees and costs.  See id at 14-15, Prayer.

The FAC identifies two putative classes on whose behalf plaintiff proposes to prosecute this action: (1) the main class, defined as "[a]ll persons who are and were employed by [d]efendants

in the State of California and who were required to purchase Ralph Lauren clothing and accessories as a condition of their employment at any time" and (2) the Labor Code § 201 sub-class, defined as "[a]ll persons within [t]he [m]ain [c]lass who have participated in [d]efendants' [s]pecial [p]urchase [p]rogram [described below] (and any predecessor wage-withholding program)." Id at 7, ¶ 26.

Briefly, plaintiff alleges that the dress code for employees working in retail sales for defendants, as implemented by managers at defendants' retail stores, constitutes an unlawful uniform policy. According to the FAC, defendants' retail employee handbook for 2002 requires all sales staff of Polo Ralph Lauren retail stores to wear Polo Ralph Lauren merchandise while at work. Id at 3, ¶ 8. In furtherance of this policy, plaintiff alleges that managers employed by defendants subjected plaintiff and other members of the main class to "improper and demeaning inspections" and even "strip searches" to ensure compliance with the uniform policy. Id at 3, ¶ 8, 4, ¶ 10. Plaintiff alleges that defendants' employees were threatened with termination if they failed to dress as required. Id at 4, ¶ 11. The core allegation of the FAC is that members of the main class were required by their employer to purchase clothing manufactured by their employer on a seasonal basis. As a practical matter, plaintiff alleges, this policy forced defendants' employees to buy high-priced clothing and accessories directly from defendants.

In addition, plaintiff alleges that defendants' "PRC Special Purchase Program" violates state law. Id at 5, ¶ 16. Through this program, plaintiff alleges, "[d]efendants 'advance' Polo Ralph Lauren products to their employees * * * and then

3

1  withhold wages from their employees to pay for the apparel and
2  accessory purchases."  Id.  Although the program offers clothing to
3  defendants' employees for purchase at a substantial discount,
4  plaintiff alleges that "[t]he program is designed to create a
5  captive, dependent, vulnerable and profitable customer base, i e,
6  [d]efendants' sales associates, who must purchase Polo Ralph Lauren
7  apparel and accessories as a condition of employment."  Id.

B

10  On March 18, 2003, defendants filed a notice of pendency
11  of another action, informing the court that a class action alleging
12  the same wrongful conduct had been filed in San Francisco County
13  superior court under the name <u>Esteen, et al v Polo Ralph Lauren</u>
14  <u>Corp, et al</u>, CGC-03-418019.  Doc #11.  On June 30, 2003, plaintiff
15  moved to dismiss the FAC for lack of jurisdiction.  Doc #21.  The
16  next day, defendants separately moved for (1) summary adjudication
17  on plaintiff's claim under the Cartwright Act and contingent claims
18  for unfair competition and declaratory relief and (2) judgment on
19  the pleadings on plaintiff's remaining claims.  Docs ##12, 13, 16.
20  On August 1, 2003, the court denied plaintiff's motion to dismiss.
21  Doc #66.  On August 11, 2003, defendants moved for sanctions
22  pursuant to FRCP 11, contending that plaintiff's counsel
23  frivolously moved to dismiss the FAC.  Doc #74.  On August 18,
24  2003, the court granted defendants' motion for summary judgment
25  (Doc #81 at 4-8) but denied defendants' motion for judgment on the
26  pleadings on the remaining claims.  Id at 8-18.
27  On October 27, 2003, the court granted defendants' motion
28  for monetary sanctions, noting that plaintiff's motion to dismiss

"was made in objective bad faith and was therefore frivolous" (Doc #100 at 25) and that "plaintiff has engaged in a pattern of serving harassing and vexatious motions and papers, apparently for the purpose of facilitating the litigation of the claim in state court, rather than federal court." Id at 28-29.  Accordingly, the court concluded that "plaintiff's motion to dismiss violates both the frivolousness and improper purpose components of Rule 11" and "reserve[d] the question of the amount of sanctions until the conclusion of this case." Id at 29-30.  The court observed, however, that "[i]t is possible that the inconvenience caused to defendants warrants sanctions in an amount more than the costs and fees associated with [plaintiff's motion to dismiss and defendants' motion for sanctions.]" Id at 30.

On January 12, 2006, plaintiff filed the instant motions and the parties stipulated to amend the FAC so that Roy Esteen, Raeshon Graham and Janika Goff would be added as named plaintiffs and RL Footwear and Fashions Outlet of America, Inc would be added as defendants. Doc #116.  On January 31, 2006, the court granted the parties' stipulation. Doc #123.

C

The proposed settlement class consists of "[a]ll current and former employees of [Polo] and/or [RL Footwear] who were employed in any [Polo] retail or wholesale store in California at any time from September 18, 1998, through May 12, 2004 (the 'Class Period')." Doc #115, Ex D (Settlement Agreement) at 2. Plaintiff's counsel estimate that approximately 4,900 employees would be eligible for the settlement. Doc #114 at 11-12.

5

The gross settlement amount is $1,500,000, comprising $1,000,000 in cash and $500,000 in Polo gift cards. Settlement Agreement at 8, ¶ 3; 12, ¶ 4(c)). From the gross settlement amount, $25,000 is subtracted for an "incentive payment" to class representative Toni Young, up to $75,000 is removed for administrative fees and costs and $500,000 is subtracted for attorneys' fees, which in turn are split equally among the three firms representing the putative class. Id at 8, ¶ 3; id at 13-14, ¶¶ 6(B), 6(c)).

Polo is to pay any reasonable administrative fees and costs in excess of $75,000. Id at 8, ¶ 3. In short, assuming that the full $75,000 is used for administrative fees, plaintiffs would receive $400,000 in cash and $500,000 in Polo gift cards. Each employee would then receive the cash and the gift cards in a 4:5 ratio summing to the total recovery to which the employee is entitled. Id at 9, ¶ 4(A). Pursuant to a recent stipulation of the parties, these gift cards would be transferable. Doc #148. Polo would retain the residue of any unused money or gift cards. Id at 13, ¶ 5.

Seventy-five percent of the settlement funds have been earmarked for former and current employees who worked on a full or part-time basis at any of Polo's retail stores in California. Id at 9-10, ¶ 4(B); 10 at ¶ 4(B)(1). The remaining twenty-five percent has been allotted for employees who worked on a full or part-time basis at any Polo factory outlet store in California. Id at 10, ¶ 4(B); 11, ¶ 4(B)(3). The maximum amount that a retail store employee could receive ranges from $1,000 to $3,000, depending on his length of tenure. Id at 10, ¶ 4(B)(1).

Similarly, the maximum amount that a wholesale store employee could receive ranges from $100 to $500, again depending on length of tenure.  Id at 11, ¶ 4(B)(3).  The actual amount that the employees receive depends on the number of people who join the settlement; if necessary, each employee's recovery would be reduced by a particular percentage, with the recovery of those employees having the longest tenure being reduced the most.  Id at 10-11, ¶ 4(B)(2); 11-12, ¶ 4(B)(4).

In consideration for the settlement, plaintiffs agree to waive any and all claims, whether for legal or equitable relief, against defendants and any related entities.  Id at 7-8, ¶ 2.  One provision in particular states, "Defendants shall not be required as part of this [s]ettlement to enter into any consent decree, nor shall [d]efendants be required to agree to any provision for injunctive relief."  Id at 16, ¶ 9.

Notice is to be provided to class members by First Class regular United States mail.  Id at 18, ¶ 10(D).  The settlement provides specific procedures for objecting (id at 18-19, ¶ 10(E)), requesting exclusion (id at 19-20, ¶ 10(F)) and submitting a claim form (id at 20-22, ¶ 10(I)).  The settlement also notes, "Plaintiffs who fail to submit a valid and timely request for exclusion on or before the [o]bjection/[e]xclusion [d]eadline [d]ate shall be bound by all terms of the [s]ettlement and any [f]inal [j]udgment entered in this [c]lass [a]ction if the [s]ettlement is approved by the [c]ourt * * *."  Id at 19-20, ¶ 10(F).

//

//

## II

FRCP 23(a) sets forth the preliminary requirements to certifying a class action: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class and (4) the representative parties must be able fairly and adequately to protect the interests of the class. See, e g, Armstrong v Davis, 275 F3d 849, 868 (9th Cir 2001).

In addition to satisfying the FRCP 23(a) prerequisites, the class must also satisfy one of the three alternatives listed under FRCP 23(b). Walters v Reno, 145 F3d 1032, 1045 (9th Cir 1998). Plaintiffs bear the burden of demonstrating they have satisfied all four FRCP 23(a) elements and one FRCP 23(b) alternative. Zinser v Accufix Research Institute, Inc, 253 F3d 1180, 1186 (9th Cir 2001). Failure to carry the burden on any FRCP 23 requirement precludes certifying a class action. Burkhalter Travel Agency v MacFarms Intl, Inc, 141 FRD 144, 152 (ND Cal 1991) (Jensen) (citing Rutledge v Electric Hose & Rubber Co, 511 F2d 668, 673 (9th Cir 1975)).

"In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v Carlisle & Jacquelin, 417 US 156, 178 (1974) (quoting Miller v Mackey Intl, 452 F 2d 424 (5th Cir 1971)) (internal quotation marks omitted). Nonetheless, the court is "at liberty to consider evidence which

goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case." Hanon v Dataproducts Corp, 976 F 2d 497, 509 (9th Cir 1992).

The court finds that the FRCP 23(a) requirements of numerosity, commonality, typicality and adequacy are met. The court further finds, pursuant to FRCP 23(b)(3), that common questions of law and fact predominate over individual questions and that class treatment of this matter is superior to any other available means of adjudication. Accordingly, the court CERTIFIES pursuant to FRCP 23 the settlement class.

### III

Next, the court considers whether the proposed settlement should be <u>preliminarily</u> approved.

> "[The] preliminary determination establishes an initial presumption of fairness * * *." In re General Motors Corp, 55 F3d 768, 784 (3d Cir 1995) (emphasis added). As noted in the Manual for Complex Litigation, Second, "[i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, then the court should direct that the notice be given to the class members of a formal fairness hearing * * *." Manual for Complex Litigation, Second § 30.44 (1985). In addition, "[t]he court may find that the settlement proposal contains some merit, is within the range of reasonableness required for a settlement offer, or is presumptively valid." Newberg on Class Actions § 11.25 (1992).

Schwartz v Dallas Cowboys Football Club, Ltd, 157 F Supp 2d 561, 570 n12 (ED Pa 2001). In other words, preliminary approval of a settlement has both a procedural and a substantive component.

Plaintiff's counsel has demonstrated that the procedure

9

1 for reaching this settlement was fair and reasonable and that the
2 settlement was the product of arms-length negotiations.  Yet the
3 court has some concerns about the substantive fairness and adequacy
4 of the settlement itself.

5       These concerns arise from the use of product vouchers in
6 the settlement award.  The federal rules instruct the court that
7 "[s]ettlements involving nonmonetary provisions for class members *
8 * * deserve careful scrutiny to ensure that these provisions have
9 actual value to the class."  Advisory Committee note for FRCP
10 23(2)(C)(h).  Product vouchers may benefit present employees who
11 still must purchase clothes for their jobs, but that is not the
12 case for former employees.  Indeed, why would former employees, who
13 allegedly were forced to buy a great deal of unwanted Polo
14 products, desire product vouchers so that they could purchase even
15 more clothes?  The transferability of the vouchers mitigates this
16 problem, but not entirely.  Despite the parties' assurances to the
17 contrary, the real economic value of such a voucher falls short of
18 their printed value.

19       The degree to which the voucher's printed value exceeds
20 its real economic value was an issue raised by the court during the
21 June 29, 2006, hearing.  Doc #141.  At the hearing, the court
22 ordered the parties "to file documentation indicating the real
23 economic values of gift cards for putative class members."  Id.  In
24 response, Daniel L Feder filed a declaration presenting the results
25 of his analysis of the secondary market for such gift cards.
26 Although anecdotal, the data suggest that the resale value of the
27 cards ranges from 80 to 85 percent of the printed value.  Doc #137
28 at 8 (Feder decl).  Because this estimation fails to account for

United States District Court
For the Northern District of California

1 transaction costs, the court finds the low end of the range, 80
2 percent of the printed value, best approximates the real economic
3 value of gift cards.
4       In view of the voucher's discounted value, it is unclear
5 to the court whether the settlement adequately compensates the
6 putative class for the damages they allegedly suffered.
7 Plaintiff's counsel have previously indicated that the lead
8 plaintiff, Toni Young, suffered approximately $23,181.84 in
9 damages, including tax.  Doc #21 at 8.  And plaintiff's counsel
10 have not provided any evidence that this claim is atypically high;
11 indeed, plaintiff's counsel contend for purposes of class
12 certification that Young is a typical plaintiff.  Doc #114 at 13-
13 14.  Accordingly, the court questions whether a maximum of $3,000
14 in recovery for retail store employees and $500 for outlet store
15 employees is sufficient, especially given that individual
16 recoveries would be reduced if enough employees joined the
17 settlement class.
18       To support the adequacy of the settlement, plaintiff's
19 counsel note the settlement awards in related employment class
20 actions against The Gap and Banana Republic and Chico's Fas
21 involving nearly identical claims.  Doc #136 at 3 (Kitchin decl);
22 Doc #137 at 4-5 (Feder decl).  The settlement in the present action
23 exceeds the value obtained in these other cases, id, especially
24 after the product vouchers were made transferable.  But the
25 pertinence of these comparisons is uncertain without an analysis of
26 the factual similarities and dissimilarities to the present case,
27 an analysis presently unavailable to the court.
28       Nevertheless, plaintiff's evidence of procedural

11

1 fairness, in conjunction with the transferability of the product
2 vouchers, suffices for the purposes of <u>preliminary</u> approval.  See
3 <u>In re General Motors Corp</u>, 55 F3d at 784 (noting the standard is
4 whether the settlement "falls within the range of possible
5 approval").  Accordingly, the court GRANTS preliminarily approval
6 of the proposed settlement, but anticipates readdressing this issue
7 at the final approval hearing.

## IV

The court next takes up the form of notice.  Plaintiff has provided a proposed form of notice, Doc #115, which is satisfactory to the court in all respects except one.  The notice should apprise putative class members of the estimated economic value of the product vouchers and should clarify that the vouchers are transferable.

Accordingly, the court APPROVES the proposed form of notice, as to both form and content, SUBJECT to the following amendments:

- As appropriate, references to "product vouchers" shall be changed to "transferrable product vouchers."
- The following language shall be inserted after the first sentence in the second paragraph of part IV:  "The parties estimate the fair market value of the vouchers to be eighty percent (80%) of the printed value.  Accordingly, vouchers worth Five Hundred Thousand Dollars ($500,000.00) in printed value, as provided by the Settlement Agreement, are worth approximately Four Hundred Thousand Dollars ($400,000.00) in resale value."

12

**V**

In sum, the court GRANTS plaintiff's motion for provisional certification of the settlement class and confirms Rosenthal & Company as the claims administrator, Patrick Kitchin, Daniel Feder and Freeborn & Peters as class counsels and Toni Young as class representative. Additionally, the court ORDERS the following schedule for further proceedings:

| | |
|---|---|
| Polo and RL Footwear to provide claims administrator data identifying all class members | Within 30 calendar days of entry of this order |
| First mailing of notice & claim form to the class | Within 30 calendar days of the date Polo and RL Footwear provide class member data to claims administrator |
| Deadline to postmark objections and opt out | Within 30 calendar days of first mailing, or 15 calendar days of the follow-up mailing, which ever is later |
| Deadline to postmark proof of claim | Within 45 calendar days of first mailing, or 15 calendar days of the follow-up mailing, which ever is later |
| Final settlement hearing and final approval | January 25, 2007, at 2:00 pm |
| Payment of claims | 60 calendar days after effective date of settlement |
| Payment of attorney fees and costs to class counsel | Within 30 calendar days of order granting final approval, or if any timely objection is filed by a class member, within 30 calendar days of the effective date of settlement |
| Payment of incentive fee to class representative | Within 30 days of effective date of settlement |
| Claims administrator to file certification of completion of administration of settlement | Within 210 calendar days of the effective date of settlement |

*//*

At the final approval hearing on January 25, 2007, at 2:00 pm, the court will determine: (1) whether the proposed settlement should be approved as fair, reasonable and adequate; (2) the merits of objections, if any, made to the settlement or any of its terms; (3) the amount of litigation costs, expenses and attorney fees, if any, that should be awarded to class counsel; (4) the amount of incentive payments, if any, to be made to Young for her services performed in this action; and (5) other matters related to the settlement, including the amount of sanctions the court will impose pursuant to its October 27, 2003, order.

IT IS SO ORDERED.

/s/ Vaughn Walker

VAUGHN R WALKER
United States District Chief Judge

14